**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JUAN L. ZANDANTE, Individually and For Others Similarly Situated | **Case No.** ___4-24-cv-03303___ |
| v. | Jury Trial Demanded |
| KELLY SERVICES GLOBAL, LLC | Rule 23 Class Action<br>FLSA Collective Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Juan L. Zandante (Zandante) brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from Kelly Services Global, LLC (Kelly Services).

2.      Kelly Services employed Zandante as one of its Nonexempt Employees (defined below).

3.      Kelly Services paid Zandante and the other Nonexempt Employees by the hour.

4.      Zandante and the other Nonexempt Employees regularly work more than 40 hours a workweek.

5.      But Kelly Services does not pay them overtime wages for hours worked in excess of 40 a workweek.

6.      Instead, Kelly Services pays Zandante and the other Nonexempt Employees in one of two ways, both of which fail to provide overtime wages, in willful violation of the Fair Labor Standards Act (FLSA).

7.      First, Kelly Services pays Zandante and the other Nonexempt Employees a flat amount for each day worked and no overtime compensation (Kelly Services' "day rate pay scheme").

8.      Second, Kelly Services pays Zandante and the other Nonexempt Employees the same hourly rate for all hours worked, including hours in excess of 40 a workweek (Kelly Services' "straight

time for overtime pay scheme").

9.    Kelly Services pays Zandante and the other Nonexempt Employees under its day rate pay scheme or straight time for overtime pay scheme during different periods of their employment, e.g., Kelly Services might pay a Nonexempt Employee under its day rate pay scheme from January through June and then pay that same employee under its day rate pay scheme from July through December.

10.    Additionally, Kelly Services pays Zandante and the other Nonexempt Employees non-discretionary bonuses that must be included in their regular rates of pay for the purpose of calculating overtime.

11.    Kelly Services uniformly misclassifies Zandante and the other Nonexempt Employees as exempt from overtime.

12.    But Kelly Services never paid Zandante and the other Nonexempt Employees on a "salary basis."

13.    Kelly Services' day rate pay scheme and straight time for overtime pay scheme violate the FLSA by depriving Zandante and the other Nonexempt Employees of the "time and a half" overtime pay they are owed for all hours worked in excess of 40 each workweek.

14.    And, as a result of Kelly Services' day rate and straight time for overtime pay schemes, these earned overtime wages remain unpaid.

15.    Thus, Kelly Services' day rate and straight time for overtime pay schemes violate the Arizona Wage Act ("AWA") by depriving Zandante and the other Nonexempt Employees of timely payment of earned overtime wages.

### JURISDICTION & VENUE

16.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17.    This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.    This Court has personal jurisdiction over Kelly Services with respect to this action because Kelly Services is registered to do business in Texas and conducts substantial business in Texas.

19.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in Harris County, Texas, including execution of employment agreements, which is in this District and Division. 28 U.S.C. 1391(b)(2).

## PARTIES

20.    Zandante has worked for Kelly Services as a Field Construction Manager from approximately May 2022 through February 2024.

21.    Kelly Services paid Zandante under its day rate pay scheme from approximately May 2022 until April 2023 and under its straight time for overtime pay scheme from April 2023 until the termination of his employment in February 2024.

22.    Zandante's written consent is attached as **Exhibit 1**.

23.    Zandante brings this action on behalf of himself and all other similarly situated employees who Kelly Services paid under its day rate pay scheme and/or its straight time for overtime pay scheme.

24.    Kelly Services failed to pay these employees premium overtime wages for the hours they worked in excess of 40 in a workweek.

25.    The FLSA Collective of similarly situated employees is defined as:

> **All Kelly Services employees who were paid a flat sum for each day worked (a day rate) and/or were paid the same hourly rate for all hours worked (straight time for overtime) at any time during the past 3 years ("FLSA Collective Members").**

26.    Zandante also seeks to represent such a class under the AWA pursuant to FED. R. CIV. P. 23.

27.    The Arizona Class of similarly situated employees is defined as:

**All Kelly Services employees who were paid a flat sum for each day worked (a day rate) and/or were paid the same hourly rate for all hours worked (straight time for overtime), while working in Arizona at any time during the past 1 year ("Arizona Class Members").**

28.    The FLSA Collective Members and Arizona Class Members are collectively referred to as the "Nonexempt Employees."

29.    Kelly Services is a Michigan limited liability company that maintains its headquarters in Troy, Michigan.

30.    Kelly Services is registered to do business in Texas.

31.    Kelly Services may be served with process by serving its registered agent: **C T Corporation System, 1999 Bryan St., Ste 900, Dallas, Texas 75201**.

### COVERAGE UNDER THE FLSA

32.    At all relevant times, Kelly Services was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

33.    At all relevant times, Kelly Services was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

34.    At all relevant times, Kelly Services was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, vehicles, tools, equipment, and personal protective gear – that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

35.     At all relevant times, Kelly Services has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

36.     At all relevant times, the Nonexempt Employees were Kelly Services' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

37.     At all relevant times, the Nonexempt Employees were engaged in commerce or in the production of goods for commerce.

38.     Kelly Services paid the Nonexempt Employees the same hourly rate for all hours worked, including those after 40 in a workweek.

39.     As a result of Kelly Services' straight time for overtime pay scheme, the Nonexempt Employees did not receive overtime at the premium rates required by the FLSA.

40.     Kelly Services applied its day rate pay scheme and/or straight time for overtime pay scheme to the Nonexempt Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

41.     By paying the Nonexempt Employees day rates and no overtime, Kelly Services did not pay the Nonexempt Employees at least 1.5 times their regular rates of pay for all hours worked after 40 each workweek.

42.     By paying the Nonexempt Employees straight time for overtime, Kelly Services did not pay the Nonexempt Employees at least 1.5 times their regular rates of pay for all hours worked after 40 each workweek.

43.     Kelly Services' day rate pay scheme and straight time for overtime pay scheme therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

44.    Kelly Services is a staffing company that bills itself as "creat[ing] limitless opportunities by connecting people to work in ways that enrich their lives," including in Arizona.[1]

45.    To meet its business objectives, Kelly Services hires workers, like Zandante and the other Nonexempt Employees, to provide services to its clients.

46.    Kelly Services pays the Nonexempt Employees on an hourly basis.

47.    Kelly Services routinely schedules the Nonexempt Employees to work more than 40 hours a workweek.

48.    Instead of paying its Nonexempt Employees at 1.5 times their regular rates of pay for hours worked in excess of 40 a workweek, Kelly Services pays them a flat day rate and/or same hourly rate for all hours worked.

49.    While exact job titles and job duties may differ, these employees are subjected to the same or similar pay practice for similar work – Kelly Services' day rate pay scheme and/or straight time for overtime pay scheme.

50.    For example, Zandante worked for Kelly Services as a Field Construction Manager, including in Chandler, Arizona, from approximately May 2022 until February 2024.

51.    As a Field Construction Manager, Zandante's primary job duties included overseeing the work of third-party sub-contractors to ensure construction for Kelly Services' client's (Air Products') facility was done in accordance with Kelly Services' and Air Products' policies, procedures, schedules, and specifications.

52.    From approximately May 2022 until April 2023, Kelly Services paid him under its day rate pay scheme at a flat rate of $700 a day:

---

[1] https://www.kellyservices.com/ (last visited August 20, 2024).

Job Title – Field Construction Manager
Start Date  – June 6, 2022
Pay/Bill Rates – $700/daily rate
Per Diem – Pending Rates
Location – Chandler, AZ

53.     Beginning in approximately April 2023, Kelly Services began paying him under its straight time for overtime pay scheme:

**From:** Stephanie Brickson
**Sent:** Tuesday, April 4, 2023 3:33 PM
**To:** Stephanie Brickson <Stephanie.Brickson@kellyocg.com>
**Cc:** Amanda Kelty Diuguid <AMAK740@kellyservices.com>
**Subject:** Upcoming Change to Your Time Submittal Process

Good afternoon,

Air Products has requested that we convert you from a day rate worker to an hourly worker that will be OT Exempt. The hourly rate was based upon 10-hour days/ 50 hours per week. This change will impact how you submit your time in Fieldglass going forward.

No action is needed at this time as our internal systems are not configured for the change-over just yet. Additional communication will come out when the change has been confirmed and inform you of next steps.

Thank you for your patience and please let us know if you have any questions.

Regards,

**Stephanie Brickson**
Talent Advisor
Payroll Outsourcing
✉: stephanie.brickson@kellyocg.com|☎: (636)489-7006

54.     Specifically, Kelly Services required Zandante to record his hours worked and paid him the same hourly rate, $70 an hour, for all hours worked, including hours worked after 40 in a workweek:

**From:** Stephanie Brickson <Stephanie.Brickson@kellyocg.com>
**Sent:** Tuesday, April 25, 2023 3:25 PM
**To:** Zandate,Juan (CONTR) <ZANDATJ@airproducts.com>
**Subject:** [External] Upcoming Change to Your Time Submittal Process

*This email is from an external source. Please exercise caution in opening attachments or links.*

Hi Juan,

Your hourly rate will be $70.00/hr. Please make sure you get re-registered in Fieldglass.

Regards,

**Stephanie Brickson**
Talent Advisor
Payroll Outsourcing
✉: stephanie.brickson@kellyocg.com | ☎: (636)489-7006

55.     For example, during the July 10 to July 16, 2023 pay period, Zandante worked 83 hours
– including 43 overtime hours – and Kelly Services paid him the same $70 an hour for all hours
worked:

| HOURS AND EARNINGS | | | | | | |
|---|---|---|---|---|---|---|
| | | ---------------- Current---------------------- | | | | |
| Description | BranRef Nbr | W/S Date | W/E Date | Rate | Hours | Earnings |
| Straight Time | 51HJA0143 | 07/10/23 | 07/16/23 | 70.00 | 83.00 | 5,810.00 |
| Total: | | | | | | 5,810.00 |

56.     Kelly Services likewise paid Zandante numerous non-discretionary bonuses:

| HOURS AND EARNINGS | | | | | | |
|---|---|---|---|---|---|---|
| | | ---------------- Current--------------------- | | | | |
| Description | BranRef Nbr | W/S Date | W/E Date | Rate | Hours | Earnings |
| Straight Time | 51HJA0143 | 01/29/24 | 02/04/24 | 70.00 | 89.00 | 6,230.00 |
| Bonus | 51HJA0152 | 01/15/24 | 01/21/24 | | | 1,099.00 |
| Bonus | 51HJA0152 | 01/29/24 | 02/04/24 | | | 1,099.00 |
| Total: | | | | | | 8,428.00 |

57.     And Kelly Services requires the other Nonexempt Employees to record the number of hours they work, as well.

58.     Like Zandante, the other Nonexempt Employees regularly work more than 40 hours a workweek.

59.     Each Nonexempt Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

60.     Indeed, Zandante and the Nonexempt Employees typically work 12-16+ hours a day, for 6 to 7 days a week (72 to 112+ hours a workweek).

61.     Zandante and the other Nonexempt Employees work in accordance with the schedule set by Kelly Services (and/or its clients).

62.     When Zandante and the Nonexempt Employees work more than 40 hours in a workweek, Kelly Services does not pay them overtime at rates not less than 1.5 times their regular rates of pay.

63.     Kelly Services only pays Zandante and the Nonexempt Employees a flat day rate and/or straight time for overtime.

64.     And like Zandante, Kelly Services pays the other Nonexempt Employees non-discretionary bonuses.

65.     Kelly Services does not pay Zandante and the other Nonexempt Employees on a "salary basis."

66.     That is, Kelly Services does not pay the Nonexempt Employees a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

67.     If Zandante and the other Nonexempt workers do not work, they do not get paid.

68.     Rather, Kelly Services only pays Zandante and the other Nonexempt Employees their set day rates for the actual days they work and/or their uniform hourly rate for hours they actually work.

69.     Zandante's and the other Nonexempt Employees' day rates and/or hourly rates do not increase when they work more than 40 hours in a workweek.

70.     Thus, Kelly Services never paid Zandante and its other Nonexempt Employees on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

71.     Zandante and the Nonexempt Employees are non-exempt from overtime and, therefore, entitled to overtime wages.

72.     But Kelly Services does not pay these non-exempt employees, including Zandante and the other Nonexempt Employees, overtime wages when they work more than 40 hours in a workweek, in violation of the FLSA and/or AWA.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

73.     Zandante brings his claims as a class and collective action on behalf of himself and the other Nonexempt Employees.

74.    The Nonexempt Employees are uniformly victimized by Kelly Services' day rate pay scheme and/or straight time for overtime pay scheme, which are in willful violation of the FLSA and violation of the AWA.

75.    Other Nonexempt Employees worked with Zandante and indicated they were paid in the same manner, performed similar work, and were subject to Kelly Services' same day rate pay scheme and/or straight time for overtime pay scheme.

76.    Based on his experience with Kelly Services, Zandante is aware Kelly Services' unlawful practices were imposed on the other Nonexempt Employees.

77.    The Nonexempt Employees are similarly situated in the most relevant respects.

78.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

79.    Any relevant exemption defenses would require Kelly Services to pay the Nonexempt Employees on a salary basis.

80.    Because Kelly Services fails the salary basis test with respect to the Nonexempt Employees, the specific job duties performed by them are largely irrelevant.

81.    The only *relevant* job duty is whether the Nonexempt Employees worked more than 40 hours in a workweek (which, by definition, they did).

82.    Therefore, the specific job titles or precise job locations of the various Nonexempt Employees do not prevent class or collective treatment.

83.    Rather, Kelly Services' day rate pay scheme and straight time for overtime pay scheme render Zandante and the other Nonexempt Employees similarly situated for the purpose of determining their right to overtime pay.

84.    Kelly Services' records reflect the number of hours recorded worked each week by the Nonexempt Employees.

85.     Kelly Services' records also show the Nonexempt Employees were paid "straight time," instead of "time and a half," for their overtime hours and/or a flat day rate with no overtime.

86.     The back wages owed to Zandante and the other Nonexempt Employees can therefore be calculated using the same formula applied to the same records.

87.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Kelly Services' records, and there is no detraction from the common nucleus of liability facts.

88.     Therefore, the issue of damages does not preclude class or collective treatment.

89.     Zandante's experiences are therefore typical of the experiences of the Nonexempt Employees.

90.     Zandante has no interest contrary to, or in conflict with, the other Nonexempt Employees.

91.     Like each Nonexempt Employee, Zandante has an interest in obtaining the unpaid wages owed under federal and/or Arizona law.

92.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this Action.

93.     Absent this class and collective action, many Nonexempt Employees will not obtain redress for their injuries, and Kelly Services will reap the unjust benefits of violating the FLSA and AWA.

94.     Further, even if some of the Nonexempt Employees could afford individual litigation, it would be unduly burdensome to the judicial system and Kelly Services.

95.     Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Nonexempt Employees' claims.

96.     The questions of law and fact that are common to each Nonexempt Employee predominate over any questions affecting solely the individual members.

97.     Among the common questions of law and fact are:

      a.      Whether Kelly Services applied its straight time for overtime pay scheme to the Nonexempt Employees;

      b.      Whether Kelly Services applied its day rate pay scheme to the Nonexempt Employees;

      c.      Whether Kelly Services misclassified the Nonexempt Employees as exempt from the FLSA's overtime provisions;

      d.      Whether the Nonexempt Employees are non-exempt employees entitled to overtime wages;

      e.      Whether Kelly Services' straight time for overtime pay scheme satisfies the "salary basis" test;

      f.      Whether Kelly Services' day rate pay scheme satisfies the "salary basis" test;

      g.      Whether Kelly Services' straight time for overtime pay scheme deprived the Nonexempt Employees of premium overtime wages they are owed under the FLSA;

      h.      Whether Kelly Services' day rate pay scheme deprived the Nonexempt Employees of premium overtime wages they are owed under the FLSA;

      i.      Whether Kelly Services' straight time for overtime pay scheme deprived the Nonexempt Employees of timely payment of earned overtime wages in violation of the AWA;

j.      Whether Kelly Services' day rate pay scheme deprived the Nonexempt Employees of timely payment of earned overtime wages in violation of the AWA;

k.      Whether Kelly Services' decision to classify the Nonexempt Employees as exempt from overtime was made in good faith;

l.      Whether Kelly Services' decision not to pay the Nonexempt Employees overtime wages was made in good faith; and

m.      Whether Kelly Services' FLSA violations were willful.

98.     Zandante knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

99.     As part of its regular business practices, Kelly Services intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Nonexempt Employees.

100.    Kelly Services' day rate pay scheme and straight time for overtime pay scheme deprived Zandante and the other Nonexempt Employees of the overtime wages they are owed under state and/or federal law.

101.    There are many similarly situated Nonexempt Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102.    This notice should be sent to the Nonexempt Employees pursuant to 29 U.S.C. § 216(b).

103.    The Nonexempt Employees are known to Kelly Services, are readily identifiable, and can be located through Kelly Services' business and personnel records.

### KELLY SERVICES' WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

104.    Kelly Services knew it was subject to the FLSA's overtime provisions.

105.    Kelly Services knew the FLSA required it to pay non-exempt employees, including the Nonexempt Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

106.    Kelly Services knew each Nonexempt Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed because it expected and required them to do so.

107.    Kelly Services knew the Nonexempt Employees were its hourly employees.

108.    Kelly Services knew it paid the Nonexempt Employees by the hour and/or by the day.

109.    Kelly Services knew it paid the Nonexempt Employees straight time for overtime.

110.    Kelly Services knew it paid the Nonexempt Employees a flat day rate with no overtime.

111.    Kelly Services knew it did not pay the Nonexempt Employees on a "salary basis."

112.    Kelly Services knew it did not pay the Nonexempt Employees any guaranteed salary that was not subject to deduction based on the number of hours or days worked.

113.    Kelly Services knew its straight time for overtime pay scheme did not satisfy the salary basis test.

114.    Kelly Services knew its day rate pay scheme did not satisfy the salary basis test.

115.    Kelly Services knew it needed to pass the salary basis test to qualify for the exemptions it might claim with respect to the Nonexempt Employees.

116.    Nonetheless, Kelly Services misclassified the Nonexempt Employees as exempt and refused to pay them overtime.

117.    Kelly Services' decision to misclassify Zandante and the other Nonexempt Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

118.    Kelly Services' failure to pay Zandante and the other Nonexempt Employees overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

119.    Kelly Services knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

120.    Kelly Services knowingly, willfully, and/or in reckless disregard carried out its straight time for overtime pay scheme that deprived the Nonexempt Employees of premium overtime wages in violation of the FLSA.

121.    Indeed, Kelly Services (and its affiliated entities) have been sued previously by employees for failing to pay them overtime wages, including for paying them under its same day rate pay scheme and/or straight time for overtime pay scheme. *See, e.g., Collier v. Corp. Employment Resources, Inc. d/b/a Kelly Servs.*, No. 2:23-cv-10500 (E.D. Mich.); *Lowe v. Corp. Employment Resources, Inc. d/b/a Kelly Servs.*, No. 02:23-cv-10484-NAG-JJCG (E.D. Mich.); *Kring v. Kelly Servs. Global, LLC*, No. No. 2:23-cv-10858-MFL-EAS (E.D. Mich.); *Abdelhak v. Kelly Servs., Inc.*, No. 2:22-cv-12548-LVP-KGA (E.D. Mich.); *Ward v. Guidant Global, Inc. d/b/a Kelly Servs. Group*, No. 2:22-CV-01002 (W.D. Pa.); *Smith v. Guidant Global, Inc., et al.*, No. 2:22-CV-01364 (W.D. Pa.); *Larry v. Kelly Servs., Inc.*, No. 2:20-CV-11481-DPH-EAS (E.D. Mich.).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

122.    Zandante brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

123.    Kelly Services violated, and is violating, the FLSA by employing non-exempt employees (Zandante and the FLSA Collective Members) in a covered enterprise for workweeks

longer than 40 hours without paying such non-exempt employees overtime wages at rates not less than 1.5 times their regular rates of pay for hours worked in excess of 40 a workweek.

124.     Kelly Services' unlawful conduct harmed Zandante and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

125.     Accordingly, Zandante and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

<u>**COUNT II**</u>
**FAILURE TO PAY EARNED WAGES UNDER THE AWA**
**(ARIZONA CLASS)**

126.     Zandante brings his AWA claim on behalf of himself and the other Arizona Class Members pursuant to FED. R. CIV. P. 23.

127.     The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq.*

128.     At all relevant times, Kelly Services was Zandante's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

129.     At all relevant times, Kelly Services employed Zandante and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* § 23-350(2).

130.     Zandante's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § 23-350(7).

131.     The AWA requires employers, like Kelly Services, to timely pay employees, including Zandante and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

132.     The AWA further requires employers, like Kelly Services, to timely pay employees, including Zandante and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

133.    The AWA prohibits employers, like Kelly Services, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

134.    Kelly Services violated, and is violating, the AWA by failing to timely pay, and instead willfully withholding earned overtime wages from Zandante and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

135.    Kelly Services' unlawful conduct harmed Zandante and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

136.    Accordingly, Kelly Services owes Zandante and the other Arizona Class Members the difference between the rate actually paid and the proper overtime rate, which to-date, remains outstanding.

137.    Kelly Services is liable to Zandante and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

138.    Finally, Zandante and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### JURY DEMAND

139.    Zandante demands a trial by jury.

### RELIEF SOUGHT

Zandante, individually and on behalf of the other Nonexempt Employees, seeks the following relief:

> a.    An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

b.  An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.  An Order appointing Zandante and his counsel to represent the interests of the Nonexempt Employees;

d.  An Order pursuant to Section 16(b) of the FLSA finding Kelly Services liable for unpaid overtime wages due to Zandante and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e.  An Order finding Kelly Services liable to Zandante and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

f.  An Order awarding attorneys' fees, costs, and expenses available under the FLSA and AWA;

g.  A Judgment against Kelly Services awarding Zandante and the other Nonexempt Employees all their unpaid overtime wages, liquidated damages, treble damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA and AWA;

h.  An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

i.  All such other and further relief that Zandante and the other Nonexempt Employees may show themselves to be justly entitled.

Dated: September 5, 2024

Respectfully submitted,

By: _/s/ Michael Josephson_
    Michael A. Josephson
    Texas Bar No. 24014780
    Andrew W. Dunlap
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS FOR ZANDANTE AND THE NONEXEMPT EMPLOYEES**